NICOLA T. HANNA
United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
REEMA M. EL-AMAMY (Cal. Bar No. 237743)
CHRISTINE M. RO (Cal. Bar No. 285401)
WILLIAM M. ROLLINS (Cal. Bar No. 287007)
Assistant United States Attorneys
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0552/4496/7407
     Facsimile: (213) 894-2927
     E-mail:    Reema.El-Amamy@usdoj.gov
                Christine.Ro@usdoj.gov
                William.Rollins@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-00209-PSG |
|---|---|
| Plaintiff, | GOVERNMENT'S UNOPPOSED EX PARTE APPLICATION FOR (1) CONTINUANCE OF TRIAL DATE, AND (2) FINDINGS OF EXCLUDABLE TIME; DECLARATION OF REEMA M. EL-AMAMY; PROPOSED ORDER |
| v. | |
| EDUARDO MORENO, | |
| Defendant. | **CURRENT TRIAL DATE:** [01-12-21] |
| | **PROPOSED TRIAL DATE:** [03-30-21] |

The United States of America, by and through its counsel of record, Assistant United States Attorneys Reema M. El-Amamy, Christine M. Ro, and William M. Rollins, hereby files its Ex Parte Application for (1) Continuance of Trial Date, and (2) Findings of Excludable Time.

**BACKGROUND**

Defendant Eduardo Moreno ("defendant") is charged in an indictment with 18 U.S.C. § 1992(a)(1): Terrorist Attacks and other Violence against Railroad Carriers and Mass Transportation Systems. This case is currently scheduled to proceed to trial on January 12, 2021, and the pre-trial conference is scheduled for December 14, 2020 at 10:00 a.m.

On March 13, 2020, following the President's declaration of a national emergency in response to COVID-19, the Court entered a General Order suspending jury selection and jury trials scheduled to begin before April 13, 2020. C.D. Cal. General Order No. 20-02, In Re: Coronavirus Public Emergency, Order Concerning Jury Trials and Other Proceedings (Mar. 13, 2020). The Court most recently renewed that suspension, until a "date to be determined," on August 6, 2020. C.D. Cal. General Order No. 20-09, In Re: Coronavirus Public Emergency, Further Order Concerning Jury Trials and Other Proceedings (Aug. 6, 2020).

Also on March 13, 2020, the Court imposed health- and travel-related limitations on access to Court facilities. C.D. Cal. General Order No. 20-03, In Re: Coronavirus Public Emergency, Order Concerning Access to Court Facilities (March 13, 2020). On March 19, 2020, by Order of the Chief Judge, the Court instituted its Continuity of Operations Plan ("COOP"), closing all Central District of California courthouses to the public (except for hearings on criminal duty matters) and taking other emergency actions. C.D. Cal. Order of the Chief Judge No. 20-042 (March 19, 2020). On March 29 and 31, recognizing COVID-19's continued spread in the community, the Court took further action: implementing video-teleconference

("VTC") and telephonic hearings and suspending all grand-jury proceedings.  C.D. Cal. Orders of the Chief Judge Nos. 20-043 (March 29, 2020) and 20-044 (March 31, 2020).  The Court's most recent General Order maintains court facilities' general closure to the public; however, it allows in-person criminal hearings for defendants who do not consent to remote appearance, and it allows up to 10 members of the public to attend.  General Order No. 20-09, at 2-3 (August 6, 2020).

These orders were imposed based on (1) the California Governor's declaration of a public-health emergency in response to the spread of COVID-19, as well as (2) the Centers for Disease Control's advice regarding reducing the possibility of exposure to the virus and slowing the spread of the disease.  See, e.g., General Order 20-02, at 1.  The Chief Judge has recognized that, during the COVID-19 crisis, all gatherings should be limited to no more than 10 people and elderly and other vulnerable people should avoid person-to-person contact altogether.  See Order of the Chief Judge No. 20-042, at 1-2.  The Court has more broadly recognized CDC guidance advising "precautions to reduce the possibility of exposure to the virus and slow the spread of the disease[.]"  General Order 20-09, at 1.

Local and state governments have adopted similar policies.  On March 19, 2020, both Los Angeles Mayor Eric Garcetti and California Governor Gavin Newsom issued emergency orders requiring residents to "stay home," subject to limited exceptions.  California Executive Order N-33-20 (March 19, 2020); accord Safer at Home, Public Order Under City of Los Angeles Emergency Authority ¶ 1 (March 19, 2020). Subject to similarly limited exceptions, all travel was prohibited.

Safer At Home ¶ 4.  Non-essential businesses requiring in-person attendance by workers were ordered to cease operations.  Id. ¶ 2.  All schools in the Los Angeles Unified School District remain closed to in-person classes.

The Federal Bureau of Prisons ("BOP") has likewise adopted aggressive procedures to protect federal inmates.  On April 1, 2020, all BOP facilities nationwide instituted a two-week lock-down, in order to combat the spread of COVID-19 and to protect people in custody.  See Federal Bureau of Prisons, COVID-19 Action Plan: Phase Five (March 31, 2020), available at https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp.  Under earlier orders, the BOP updated its quarantine and isolation procedures to require all newly admitted inmates to be quarantined for a minimum of 14 days.  Id.  It likewise suspended in-person social visitation and restricted inmate movement between facilities.  See Federal Bureau of Prisons, Bureau of Prisons Update on COVID-19 (March 24, 2019), available at https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_covid19_update.pdf.  These restrictions remain in place.

As these orders reflect, the novel coronavirus pandemic is a global emergency that is unprecedented in modern history.  As data from both the Centers for Disease Control and the California Department of Public Health reflect, the virus has spread through the United States community at an alarming rate.  See Coronavirus Disease 2019 (COVID-19) in the U.S., Centers for Disease Control and Prevention (updated daily), available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html; Coronavirus Disease 2019 (COVID-19), California Department

of Public Health (updated daily), available at https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx. The death toll, across the world, is staggering.

The Court's most recent General Order concluded, based on these facts, that "in order to protect public health, and in order to reduce the size of public gatherings and reduce unnecessary travel," it was necessary to suspend criminal jury trials until further notice. General Order 20-09, at 1 (August 6, 2020). The Court concluded that, given the increased rates of COVID-19-related hospitalization and death over the preceding 30 days, "holding jury trials substantially increases the chances of transmitting the Coronavirus," and it would thus "place prospective jurors, defendant, attorneys, and court personnel at unnecessary risk." Id. at 3. The Court concluded that suspending jury trials thus served the ends of justice and outweighed the interests of the public and defendants in a speedy trial. Id.

The Central District of California thus has not adopted any protocols for safely conducting jury trials. See id.

**DISCUSSION**

Here, the time between January 12, 2021 and March 30, 2021 should be excluded from the Speedy Trial Act.

The Speedy Trial Act generally requires a trial to begin within 70 days of indictment or initial appearance, whichever occurs later, 18 U.S.C. § 3161(c)(1), and entitles the defendant to dismissal of the charges (with or without prejudice) if that deadline is not met, § 3162(a)(2).

Certain periods of time, however, are excluded from the Speedy Trial Act's trial clock. Id. § 3161(h). Some periods of time are

automatically excluded, including periods of delay resulting from the absence or unavailability of the defendant or an essential witness. Id. § 3161(h)(3)(A). Other periods of time are excluded only when a judge continues a trial and finds, on the record, that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." Id. § 3161(h)(7)(A).

In this case, the time between January 12, 2021 and March 30, 2021 should be excluded from the Speedy Trial Act under the ends-of-justice provision, 18 U.S.C. § 3161(h)(7)(A).

Although General Orders 20-02 through 20-09 address district-wide health concerns and make Speedy Trial Act findings under § 3161(h)(7)(A), individualized findings are nevertheless necessary in this case. See General Order 20-02 at 2 ¶ 4; General Order 20-09 at 2 ¶ 6(a). The Supreme Court has emphasized that the Speedy Trial Act's ends-of-justice provision, § 3161(h)(7)(A), "counteract[s] substantive openendedness with procedural strictness," "demand[ing] on-the-record findings" in a continued case. Zedner v. United States, 547 U.S. 489, 500 (2006). "[W]ithout on-the-record findings, there can be no exclusion under" § 3161(h)(7)(A). Moreover, any such failure generally cannot be harmless. Id. at 509.

Judged by the plain language of the Speedy Trial Act, the General Orders require specific supplementation here. Specifically, ends-of-justice continuances are excludable only if "the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C.

§ 3161(h)(7)(A). Moreover, no such period is excludable unless "the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." Id. The period must also be "specifically limited in time." United States v. Lewis, 611 F.3d 1172, 1176 (9th Cir. 2010).

As the above facts reflect, the ends of justice justify excludable time here. Pandemic, like natural disaster or other emergency, grants this Court the discretion to order an ends-of-justice continuance. "Although the drafters of the Speedy Trial Act did not provide a particular exclusion of time for such public emergencies (no doubt failing to contemplate, in the more innocent days of 1974, that emergencies such as this would ever occur), the discretionary interests-of-justice exclusion" certainly covers this situation. United States v. Correa, 182 F. Supp. 2d 326, 329 (S.D.N.Y. 2001) (addressing September 11 attacks); see Furlow v. United States, 644 F.2d 764, 767-69 (9th Cir. 1981) (affirming Speedy Trial exclusion after eruption of Mount St. Helens); accord United States v. Stallings, 701 F. App'x 164, 170-71 (3d Cir. 2017) (same, after prosecutor had "family emergency"); United States v. Hale, 685 F.3d 522, 533-36 (5th Cir. 2012) (same, where case agent had "catastrophic family medical emergency"); United States v. Scott, 245 Fed. Appx. 391, 394 (5th Cir. 2007) (same, after Hurricane Katrina); United States v. Richman, 600 F.2d 286, 292, 293-94 (1st Cir. 1979) (same, after a "paralyzing blizzard" and the informant was hospitalized).

Here, the public health risks outlined above--and the findings articulated in General Orders 20-02 and 20-09--justify a continuance.  As the President, the California governor, the Los Angeles mayor, and this Court's own General Orders have recognized, we are in the midst of a grave public-health emergency requiring people to take extreme measures to limit contact with one another. The Central District of California has no established jury-trial protocol at present; instead, the Court has concluded that jury trials would "place prospective jurors, defendant, attorneys, and court personnel at unnecessary risk."  General Order 20-09 at 3 ¶ 6(a).  In the absence of such a district-wide protocol, proceeding with a jury trial is unsafe.

An ends-of-justice delay is particularly apt in this case because:

- The closure of Los Angeles's public schools (through at least the currently-scheduled trial date and potentially through the end of the school year), will require a significant number of jurors to handle child-care responsibilities and thus be unavailable for jury service.

In addition, due to the restrictions imposed by current public-health concerns, it is also unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within Speedy Trial Act time limits.  Counsel, United States Attorney's Office personnel, and victim-witness specialists have been encouraged to telework to minimize personal contact to the greatest extent possible.  And defense counsel has informed the undersigned AUSA about her current inability to meet and confer with defendant due to visitation and communication restrictions that are presently

in place at the Metropolitan Detention Center in Los Angeles ("MDCLA"), where defendant is currently incarcerated.

Finally, trial preparation necessarily involves close contact with witnesses, inconsistent with advice from the CDC and the Los Angeles County Department of Public Health, which currently warns that the COVID-19 threat level in Los Angeles County presents "very high and widespread risk," requiring residents to "minimize all contact." See COVID-19: Keeping Los Angeles Safe, available at https://corona-virus.la/covid-19-threat-level (last accessed Nov. 27, 2020). Under these unusual and emergent circumstances, denial of a continuance is likely to deny all counsel reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

In addition, the time between November 16, 2020 and December 15, 2020 should also be excluded from the Speedy Trial Act given the unavailability of the defendant. 18 U.S.C. § 3161(h)(3)(A). At this time:

- According to the Warden of MDCLA, in November 2020, more than 200 inmates at MDCLA where defendant is presently housed contracted COVID-19. In order to attempt to stop the spread of COVID-19 at MDCLA, the Warden will not permit inmates to attend any VTC hearings, VTC visits, or in person legal or social visits, or use the TRULINCS email system or the telephone system at MDCLA through at least December 15, 2020, if not later.

Thus, although defendant's whereabouts are known, defendant cannot appear and is unavailable for trial, even with the exercise of due diligence. See generally United States v. Burrell, 634 F.3d 284,

290-93 (5th Cir. 2005) (discussing standard). The relevant time, therefore, should also be excluded under § 3161(h)(3)(A).

Based on the foregoing, the Court should enter a case-specific order finding excludable time under 18 U.S.C. § 3161(h)(7)(A). However, nothing in the Court's order should preclude a finding that other provisions of the Speedy Trial Act dictate that additional time periods are excluded from the period within which trial must commence.

Dated: December 2, 2020

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division

        /s/
REEMA M. EL-AMAMY
CHRISTINE M. RO
WILLIAM M. ROLLINS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

DECLARATION OF REEMA M. EL-AMAMY

I, REEMA M. EL-AMAMY, declare as follows:

1. I am an Assistant United States Attorney and am one of the attorneys responsible for the government's prosecution of United States v. Eduardo Moreno, CR No. 20-00209-PSG. I submit this declaration in support of the government's prosecution, and I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2. The Warden of the Metropolitan Detention Center in Los Angeles ("MDCLA") has informed the attorneys in my Office that, in November 2020, more than 200 inmates were diagnosed with COVID-19. In order to attempt to stop the spread of COVID-19 at MDCLA, the Warden will not permit inmates to attend any video-teleconference ("VTC") hearings, VTC visits, or in person legal or social visits, or use the TRULINCS email system or the telephone system at MDCLA through at least December 15, 2020, if not later.

3. Defendant is presently housed at MDCLA.

4. On November 30, 2020, I met and conferred with defendant's counsel regarding this application. She informed me that she is presently unable to meet and confer with defendant due to the COVID-19 outbreak at MDCLA. Counsel for defendant informed me that she does not object to a continuance of the trial date to March 30, 2020.

//
//
//

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on December 2, 2020.

                                        */s/ Reema M. El-Amamy*
                                        REEMA M. EL-AMAMY